**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Kooi, | No. CV-19-05720-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| ADS Foods LLC, | |
| Defendant. | |

Plaintiff moves for default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55(b). (Doc. 16.) No response has been filed and the time for filing one has passed. For reasons stated below, default judgment is appropriate.

**I. Background**[1]

Beginning in May of 2012, Defendant, a franchisee of Kentucky Fried Chicken, employed Plaintiff. When Plaintiff was 25 years old, Defendant hired a male store manager who oversaw Plaintiff. The store manager made frequent sexual remarks to and about her and other female employees, touched her sexually, forcibly hugged her, used his comparatively large size to domineer her, and acted in other ways that made Plaintiff feel unsafe in her workplace. Plaintiff reported the store manager's behavior to her area manager. Not only did the area manager fail to discipline the store manager or otherwise

---

[1] The following facts are drawn from Plaintiff's complaint, the exhibits appended to her motion for default judgment, and the testimony given at the July 21, 2020 evidentiary hearing.

address his behavior, he gaslit Plaintiff—making her feel to blame, telling her that the store manager's behavior did not constitute sexual harassment, belittling and brushing aside her concerns, and advising Plaintiff that, in any event, it was her own responsibility, not management's, to confront the store manager. Approximately one week later, Defendant transferred Plaintiff to a different location. Another week later, in July 2013, she discovered that Defendant had terminated her employment.

Plaintiff, having been paid by Defendant approximately $9.25 per hour while raising four children, was unable to make her next rent payment. She quickly parted with her belongings and moved with her children to Las Vegas, Nevada, where they shared a small apartment with her parents. She spiraled into depression, practicing self-harm and emotionally isolating herself from her family. She submitted several job applications but dreaded the prospect of returning to a toxic work environment and, facing housing insecurity, was uncertain where she would be living in the foreseeable future. In November 2013, she and her family moved to Pahrump, Nevada, where she secured employment with Best Western in December 2013. However, one month later, in January 2014, she resigned from Best Western and purchased a home in Surprise, Arizona, thanks to an inheritance. Plaintiff did not actively seek out employment again until August 2015, at which point she secured a position at Whataburger.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 30, 2019, the EEOC determined that "there is reasonable cause to believe that [Defendant] violated Title VII when it subjected [Plaintiff] and other aggrieved female employees to sexual harassment." (Doc. 16-1 at 7.) On December 3, 2019, Plaintiff brought this action, which asserts a claim against Defendant for sexual harassment in violation of Title VII. (Doc. 1.) Defendant was served with the summons and complaint on February 8, 2020 but failed to appear or otherwise respond to the complaint. (Docs. 11, 16.) On March 3, 2020, Plaintiff filed her application for entry of default against Defendant, and the Clerk entered default the following day. (Docs. 13, 14.) On June 15, 2020, Plaintiff filed the instant motion for default judgment,

which requests attorneys' fees and costs, backpay, compensatory and punitive damages, and prejudgment interest. (Doc. 16.) On July 21, 2020, the Court conducted an evidentiary hearing, ordered Plaintiff to file a supplemental brief as to punitive damages, and took the matter under advisement. (Doc. 20.)

**II. Default Judgment Standard**

After default is entered by the clerk, the district court may enter default judgment pursuant to Rule 55(b). The court's "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Although the court should consider and weigh relevant factors as part of the decision-making process, it "is not required to make detailed findings of fact." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

The following factors may be considered in deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the merits and sufficiency of the complaint, the court accepts as true the complaint's well-pled factual allegations, but the plaintiff must establish all damages sought in the complaint. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

**III. Discussion**

The first *Eitel* factor weighs in favor of default judgment. Defendant failed to respond to the complaint or otherwise appear in this action, despite participating in the EEOC administrative process and being served with the complaint, the application for default, and the motion for default judgment. If default judgment is not granted, Plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The prejudice to Plaintiff in this regard supports the entry of default judgment.

The second, third, and fifth *Eitel* factors favor default judgment where, as in this case, the complaint sufficiently states a plausible claim for relief under the pleading standards of Rule 8. *See id.* at 1175; *Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978). A review of the complaint's well-pled allegations shows that Plaintiff has stated a plausible claim against Defendant for violation of Title VII. In fact, on July 30, 2019, the EEOC determined that "there is reasonable cause to believe that [Defendant] violated Title VII when it subjected [Plaintiff] and other aggrieved female employees to sexual harassment." (Doc. 16-1 at 7.) Moreover, given the sufficiency of the complaint and Defendant's default, "no genuine dispute of material facts would preclude granting [Plaintiff's] motion." *PepsiCo*, 238 F. Supp. 2d at 1177.

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *See PepsiCo*, 238 F. Supp. 2d at 1176. Here, Plaintiff seeks damages, including attorneys' fees and costs, in the amount of $91,193.20. (Doc. 16 at 6.) This amount is rationally related to the serious Title VII violations alleged and their severe impact on Plaintiff.[2] Turning to the sixth factor, Defendant was properly served with process in this matter. It also was served with the present motion for default judgment. It therefore "is unlikely that Defendant's failure to answer and the resulting default was a result of excusable neglect." *Gemmel v. Systemhouse, Inc.*, No. CIV 04-187-TUC-CKJ, 2008 WL 65604, at *5 (D. Ariz. Jan. 3, 2008). Thus, the sixth *Eitel* factor, like the other five discussed above, weighs in favor of default judgment.

The last factor always weighs against default judgment given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere existence of Rule 55(b), however, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, Defendant's failure to answer the complaint "makes a decision on the merits impractical, if not impossible." *Gemmel*, 2008 WL 65604, at *5. Stated differently, it is difficult to reach the

---

[2] Nevertheless, the Court has reduced Plaintiff's damages to $60,483.20 plus backpay prejudgment interest for the reasons described below.

- 4 -

merits when the opposing party is absent. Because Plaintiff has asserted plausible claims for relief to which Defendant has failed to respond, the policy encouraging decisions on the merits does not weigh against the granting of default judgment in this case.

**IV. Damages**

"The district court has wide discretion in awarding remedies to make a Title VII plaintiff whole." *Odima v. Westin Tucson* Hotel, 53 F.3d 1484, 1495 (9th Cir. 1995) (citation omitted). Plaintiff requests attorneys' fees and costs, backpay, compensatory and punitive damages, and prejudgment interest. (Doc. 16.) The Court will address each form of relief, in turn.

Plaintiff, as the prevailing party in a Title VII action, is entitled to reasonable attorneys' fees and costs. *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 517–18 (9th Cir. 2000). Plaintiff requests $3,920 in fees and $643.20 in costs. (Doc. 16-2.) The Court, having reviewed counsel's affidavit and billing materials, concludes that an award of $4,563.20 in fees and costs is reasonable.

Turning to backpay damages, the Court will limit Plaintiff's award to the four-month period between her termination and her employment with Best Western. The record indicates that Plaintiff voluntarily resigned from Best Western in January 2014 and ceased actively searching for employment until August 2015. Because Plaintiff did not mitigate her damages following her return to Arizona, it is appropriate to limit the scope of her backpay period.[3] *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 ("[T]he backpay period may terminate earlier if the plaintiff has voluntarily removed herself from the job market."). The Court will therefore award Plaintiff $5,920 in backpay.[4]

Next, Plaintiff seeks compensatory and punitive damages up to the $50,000 statutory cap. 42 U.S.C. § 1981a(b)(3)(A). The Court will award Plaintiff the full $50,000 amount—$35,000 in compensatory and $15,000 in punitive damages—for the following reasons. First, considering "the emotional pain, suffering, inconvenience, mental anguish,

---

[3] At the evidentiary hearing, counsel also agreed that such a limitation on the backpay award's scope would be appropriate.

[4] The Court arrived at this sum based on Plaintiff's $9.25 hourly salary, multiplied by her forty-hour workweek during a four-month span.

- 5 -

loss of enjoyment of life, and other nonpecuniary losses" suffered by Plaintiff as a result of Defendant's Title VII violations, the Court awards Plaintiff $35,000 in compensatory damages. 42 U.S.C. § 1981a(b)(3). At the evidentiary hearing, Plaintiff described that, during her employment with Defendant, she experienced severe daily anxiety arising from her supervisor's sexual harassment. She testified that she dreaded attending work, was constantly on edge, and—in addition to fearing the everyday unpleasant and inappropriate interactions, such as unwanted touching, that occurred in front of her coworkers—worried that her supervisor might sexually assault or otherwise harm her if he were to encounter her alone. Her mother and former fiancé also testified that Plaintiff's personality changed drastically, which strained their relationships. In addition, following Defendant's termination of her employment following her report of harassment, Plaintiff experienced both anxiety and depression. Plaintiff lost her ability to support herself and her family and was required to move multiple times in a short period to keep afloat. The experience damaged her sense of self-worth, shattered her confidence in the ability to be a good mother, daughter and partner, and led her to withdraw from others and practice self-harm.

Second, the Court awards Plaintiff $15,000 in punitive damages. An award of punitive damages is appropriate because Plaintiff has demonstrated that Defendant "engaged in a discriminatory practice . . . with reckless indifference" to Plaintiff's federal rights under Title VII. 42 U.S.C. § 1981a(b)(1). This reckless indifference standard is satisfied when, like here, a supervisor harasses the plaintiff and the employer fails to remedy the harassment despite being notified. *Swinton v. Potomac Corp.,* 270 F.3d 794, 810 (9th Cir.2001); *see also E.E.O.C. v. Swissport Fueling, Inc.,* 916 F. Supp.2d 1005, 1035 (D.Ariz.2013); *Eichenberger v. Falcon Air Exp. Inc.*, No. CV-14-00168-PHX-DGC, 2015 WL 3999142, at *7 (D. Ariz. July 1, 2015). The record indicates that Plaintiff informed her area manager of her supervisor's harassing behavior. Rather than remedy the harassment, Defendant brushed aside Plaintiff's concerns and terminated her in retaliation. Such an egregious failure to prevent sexual harassment in the workplace, in conjunction with Defendant's termination of Plaintiff for reporting harassment, more than justifies the

Court's $15,000 punitive damages award.

Finally, Plaintiff shall be awarded prejudgment interest on her backpay at a rate of 1.3%, calculated from July 2013, when Plaintiff lost her job. *See W. Pac. Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280, 1289 (9th Cir.1984) ("[T]he measure of interest rates prescribed for post-judgment interest in 28 U.S.C. § 1961(a) is [] appropriate for fixing the rate for prejudgment interest[.]"). *See also Eichenberger*, 2015 WL 3999142, at *8-9; *Isom v. JDA Software Inc.*, 176 F. Supp. 3d 871, 877 (D. Ariz. 2016).

In sum, Plaintiff is entitled to recover $60,483.20 plus backpay prejudgment interest at a rate of 1.3%.

**IT IS ORDERED** that Plaintiff's motion for default judgment (Doc. 16) is **GRANTED**. Default judgment shall be entered in favor of Plaintiff and against Defendant in the amount of **$60,483.20** plus backpay prejudgment interest at a rate of 1.3%. The Clerk of the Court shall enter judgment in accordance with this order and terminate this case.

Dated this 6th day of August, 2020.

Douglas L. Rayes
United States District Judge